# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TERRANCE W. COX, JR.,

    Plaintiff,                               CIVIL ACTION NO. 13-14553

  v.                                  DISTRICT JUDGE STEPHEN J. MURPHY, III
                                    MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

**II.    REPORT**

    **A.  Introduction and Procedural History**

Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits on April 21, 2011, alleging that he had become disabled and unable to work on December 1, 2009, at age 43, due to diabetes and peripheral neuropathy. Benefits were denied by the Social Security Administration. A requested de

novo hearing was held on May 9, 2012, before Administrative Law Judge (ALJ) Patricia McKay. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work where he would not be exposed to power tools, vibrations or workplace hazards. Claimant was also found incapable of climbing ladders, and he needed a cane to balance and stand. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 43 years old at the time of the administrative hearing (TR 169). He had been graduated from high school and had been employed during the relevant past as a machine operator, parts assembler, signature gatherer and press operator (TR 190-191). Claimant stopped working in March 2011, due to severe joint pain and stiffness. Other impairments which prevented him from returning to work included diabetic neuropathy and sleep apnea (TR 68, 71). Plaintiff testified that he was unable to care for his personal needs because joint stiffness prevented him from reaching and bending (TR 66-67). He allegedly cannot wear shoes in the afternoon because his feet swell up due to neuropathy (TR 68). Claimant had difficulty driving due to foot and thigh pain (TR 69). He cannot hold a cell phone for extended periods because his fingers lock up (TR 74). Plaintiff must rely on his wife to inject him with insulin five times per day because he could not hold a needle (TR 78).

A Vocational Expert, Scott Silver, classified Plaintiff's past work as sedentary to medium, semi-skilled activity (TR 86). The witness testified that there were no jobs for

claimant to perform if his testimony were fully accepted[1] (TR 94). If he were capable of sedentary work, however, there were numerous unskilled order clerk and surveillance system monitoring jobs that he could perform with minimal vocational adjustment (TR 92). These jobs did not expose workers to workplace hazards, such as moving machinery or unprotected heights. They did not involve using power or vibrating tools. The use of foot controls was kept to a minimum, and there was no requirement to frequently climb stairs, crouch, crawl, kneel, bend or stoop. Workers would not need to reach behind themselves. The jobs allowed the use of a cane when standing or for balance (TR 92).

**B.     ALJ's Findings**

The Administrative Law Judge found that Plaintiff was impaired as result of diabetes mellitus, peripheral neuropathy, degenerative disc disease of the lumbar spine, morbid obesity[2], obstructive sleep apnea, psoriasis, degenerative joint disease of both knees, osteoarthritis of the hands, plantar fasciitis, heel spurs and chronic joint pain. The ALJ determined, however, that the claimant did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's joint pain prevented him from reaching behind himself, climbing stairs or working in dangerous places. Plaintiff was found incapable of using power or vibrating tools. He could only occasionally climb stairs, crouch, crawl, kneel, stoop or bend. Claimant

---

[1] The witness opined that, if claimant needed to take four unscheduled breaks every day lasting at least 10 minutes to relieve his pain symptoms, all work activity would be precluded (TR 94).

[2] The ALJ considered the impact of Plaintiff's obesity in accordance with Social Security Ruling (SSR) 02-1p (TR 21-23). The ALJ accounted for Plaintiff's obesity by limiting him to only occasional stair climbing, crouching, crawling, kneeling, and bending/stooping (TR 23, 26). She also accommodated obesity by including the use of an assistive device for balance (TR 23).

3

had difficulty fingering and feeling objects. Nevertheless, he found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 19-29).

    **C.**     **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

**D.     Discussion and Analysis**

After review of the record, I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work where he would not be exposed to power tool vibrations or workplace hazards. Contrary to Plaintiff's assertion, the medical evidence does not support his allegation of totally disabling joint pain or peripheral diabetic neuropathy. The ALJ's decision is consistent with the specific limitations imposed by examining physicians.

The medical evidence reveals that claimant's arthritis was well controlled with medication. Dr. Mustapha Mallah, a treating rheumatologist, reported in June 2011, that claimant enjoyed a 70% improvement in his ability to sit and walk after taking prescribed Enbrel (TR 338). Moreover, multiple podiatric examinations revealed normal objective findings (TR 259, 275, 285, 440, 443, 445, 452, 454). Plaintiff's treating neurologist, Dr. Sarih Dalati, found that Plaintiff had only mild difficulty with tandem gait. The doctor concluded that claimant's complaints of severe pain were excessive in light of EMG findings that revealed only mild neuropathy, and lumbar MRI findings that showed no signs of stenosis (TR 241-42, 245-48).

Another treating rheumatologist, Dr. Susan Van Dellen, consistently reported that Plaintiff had a normal gait without the need of a cane. There was no evidence of synovitis in the feet or ankles (TR 382-88). The rheumatologist noted in November 2011, that claimant had normal strength in all extremities, no effusion in the knees, and that medications

helped control his psoriatic arthritis (TR 382-83).  That assessment was shared by Dr. Samir Yahin, another examining rheumatologist, who observed in April 2012, that Enbrel effectively controlled Plaintiff's psoriatic arthritis.  The doctor identified some joint tenderness, but found only a mildly reduced ranges of motion in both shoulders and lumbar spine (TR 472-73).

The ALJ did acknowledge that initial exams revealed that Plaintiff experienced extensive tenderness in his hands and upper extremities. However, the ALJ correctly pointed out that subsequent clinical evaluations showed considerable improvement in early 2011 once claimant began taking Enbrel (TR 24). Plaintiff had no active synovitis in the hands by March 2011 (TR 338-40). During consulting physiatrist Dr. A. Sadiq's July 2011 exam, Plaintiff had a normal range of motion in all joints, no tenderness or effusion, intact dexterity, and normal grip strength (TR 371-72).  X-rays taken in August 2011, revealed only minimal degenerative changes in Plaintiff's hands (TR 378).  A report from Dr. Van Dellen in October 2011, indicated essentially normal findings (apart from a "hint" of swan necking). Three months later, the doctor discovered that Plaintiff had normal ranges of motion in all upper extremities, and only mildly diminished ranges of motion in his shoulders and lumbosacral spine (TR 385). Both Drs. Van Dellen and Yahin continued to report that Plaintiff's psoriatic arthritis was well-controlled with medications (TR 421-22, 472-73).

The ALJ correctly noted that Plaintiff's allegations of extreme limitations were inconsistent with his abilities to watch television, use a computer, attend appointments, sit and stand as needed, drive for 30 minutes at a time, visit homes of friends and relatives, and

6

temporarily work as a sample manager in a seated position (TR 25, 50-51, 64-65, 210-211). The medical evidence also revealed that Plaintiff's mild sleep apnea was entirely relieved by the use of a CPAP device (TR 382-83, 473, 493-497).  Finally, claimant's repeated failure to adhere to treatment recommendations, such as not performing exercises to help his heel pain (TR 440, 443, 445-48, 450, 452, 454), or not checking his blood sugar levels as often as required (TR 391, 618), undermined his credibility that he was permanently disabled from all work activity.

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments[3], the Vocational Expert testified that there were numerous unskilled order clerk and surveillance system monitoring jobs that he could perform with minimal vocational adjustment (TR 92).  These jobs did not expose workers to workplace

---

[3]Contrary to Plaintiff's assertion, the ALJ's hypothetical question to the vocational expert was not flawed because it did not include all his medically corroborated complaints. While Plaintiff contends that the hypothetical question did not account for his inability to sit or stand for prolonged periods, the ALJ accounted for these problems by restricting Plaintiff to: 1)sedentary work; (2)could only occasionally climb stairs, crouch, crawl, kneel, stoop, and bend; (3) could only frequently perform grasping and gross manipulation and only occasionally finger/feel and operate foot controls; (4) required an assistive device for balance; (5) could not reach behind himself; (6) could not use power tools or vibrating tools; (7) could not be exposed to workplace hazards; and (8) could not climb ladders (TR 23). Since the ALJ's hypothetical accurately incorporated the RFC finding, the ALJ was entitled to rely on the VE's testimony. See Smith v. Halter, 307  F.3d 377, 378 (6th Cir. 2001)(VE's testimony in response to accurate hypothetical  question constitutes substantial evidence).

hazards such as moving machinery or unprotected heights. They did not involve the use of power or vibrating tools. The need to use of foot controls was minimal, and there was no requirement to frequently climb stairs, crouch, crawl, kneel, bend or stoop. Workers would not need to reach behind themselves. The jobs allowed the use of a cane when standing or for balance (TR 92). Given the objective clinical findings of the examining physicians of record, substantial evidence exists on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

**III.  REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis

v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/ Charles E Binder
                                        CHARLES E. BINDER
Dated: October 7, 2014                   United States Magistrate Judge